## THE ADELIA.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 65. Argued November 3, 1873. — Decided November 17, 1873.

On the facts detailed in the opinion, the court holds that there was no contributory negligence on the part of the libellant.

THE case is stated in the opinion.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The steam tug Adelia had fifteen barges in tow on the Hudson River, bound from Albany to New York. The barges were arranged under the directions of the master of the Adelia, four abreast, and in four tiers. The libellant's barge, Alaska, was on the larboard side of the front tier, about three hundred feet in rear of the tug. The other tiers followed at short intervals, some eight or ten feet apart. About two o'clock in the morning, when a mile and a half below Hudson, the tug ran aground on the east side of the river, and the tow-boats, being perfectly helpless, came upon her, and the

barge of the libellant was staved in by her propeller, as is supposed, and sank. · It is agreed that it was quite dark at the time, and the captain of the tug says that half a gale was blowing from N.N.W. There is conflicting evidence as to the width of the channel at that place, but the weight of it is, and the assessors found, that it is six hundred feet. The tide was at ebb, and the progress of the tug and tows was about three miles an hour, which is nearly three hundred feet per minute. Of course, if the tug stopped, the tow-boats would be upon her in a little over a minute of time. The pilot of the tug says that, "there are flats on both sides of the river; that they were steering by marks on the land when they could see them, and when they could not see them they steered by guess work; that they could not see the shore or any mark on it when they grounded, and had not been able to get a regular mark for half an hour before they grounded." It seems so very manifest that this was hazardous sailing, that the claimants feel the necessity of relying more on the alleged negligence of the owner of the barge in contributing to the accident, than on any justification of their own conduct. The assessors to whom the questions of fact were referred below, reported as follows: "The assessors have no hesitation in saying that the tug was in fault in not using the proper skill and judgment (caution) in navigation of the said tug. To exemplify: it appears that the navigator of the tug elected to proceed with his tow under what the assessors think were very hazardous circumstances. It is shown by the testimony that the wind was blowing strong, if not nearly a gale; the night was dark, spitting snow occasionally; no landmarks were discernible, or any visible thing to guide the navigator in this 'blind' part of the channel; yet, notwithstanding this, there was no lead, no sounding pole, or any means whatever used to ascertain the depth of the water, or to warn the navigator of his approach on to the flats which lined that portion of the river. This neglect seems the more reprehensible as the channel is deep, (reference to the chart presented shows that the channel is about six hundred feet wide where the collision occurred,) and the approach to the flats steep, and consequently more readily indicated."

In this verdict of the assessors we concur.

The question then arises whether the libellant, by his own negligence, contributed to the accident. It appears that there was no one on the deck of the barge when the collision happened. On one or two of the barges in the forward tier there were persons on deck at the time. But they all agree in saying that nothing could

have been done to prevent the collision. Their rudders, if they could have been unlashed, were at once disabled by the approach of the barges behind, and they could hardly be apprised of the stopping of the tug before they were down upon her. Besides, the whole tow as well as the tug was under the direction of the master of the latter, and it does not appear that he required the people in the barges to be on the lookout. An experienced tug captain testified that they don't expect to have any one on the deck of the tows; that it is not customary, and is not required. On this point the assessors say: "The assessors are of the opinion that there could not have been anything done to prevent the collision, because, 1st, the distance was too short, say three hundred feet at three knots, would be overcome in one minute of time; 2d, because those on board of the tow had no intimation that the tug was ashore, or even in danger, as the hail to 'keep off' or 'keep clear' certainly conveyed no warning that such a state of things existed, but would clearly be taken for an order to 'keep off' from the 'flats.'"

*The decree is affirmed, with interest and costs.*

Mr. *Edward D. McCarthy* and Mr. *J. Hubley Ashton* for appellant.

Mr. *Morton P. Henry*, Mr. *T. C. T. Buckley* and Mr. *James W. Paul* for appellee.